**Affirmed; Opinion Filed February 13, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-19-00376-CR

### ARCHIE DOMINIC ROBERTS, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 7
Dallas County, Texas
Trial Court Cause No. F-1776963-Y**

## MEMORANDUM OPINION
Before Justices Myers, Schenck, and Carlyle
Opinion by Justice Carlyle

A jury convicted appellant Archie Dominic Roberts of aggravated assault with a deadly weapon and assessed punishment at sixty years' imprisonment. In his sole issue on appeal, Mr. Roberts contends the trial court abused its discretion by admitting photographs of a witness's injuries into evidence during the trial's guilt/innocence phase. We affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

**Background**

Mr. Roberts was indicted for shooting Jacob Arellano. At trial, Priscilla Garcia testified that at about 4:30 a.m. on December 21, 2017, Mr. Arellano drove her and her ten-year-old son, D.H., to a convenience store in his truck. All three rode in the truck's front bench seat, with Ms. Garcia nearest to the front passenger window and D.H. between the two adults. Mr. Arellano

parked near a gas pump and went into the store to get some tacos. Ms. Garcia and D.H. remained in the truck.

According to Ms. Garcia, while Mr. Arellano was in the store, Mr. Roberts and another man approached the truck's front passenger window and Mr. Roberts tried to talk to her. She began rolling up the window and told Mr. Roberts, "Get away from the truck. I have my son in the car. Show a little bit of respect." Mr. Roberts "put his hand in the window trying to get it to come down."

Mr. Arellano came out of the store, walked quickly to the truck's passenger side, and asked the two men why they were there. Mr. Roberts stepped back from the window and pushed Mr. Arellano, who then pushed Mr. Roberts. Ms. Garcia testified she saw Mr. Roberts "pull out a gun," fire several shots at Mr. Arellano, then head toward the back of the truck. She grabbed her son, pushed him to the floor, and leaned over him to shield him. She lifted her head to look for Mr. Arellano and saw him "wrestling" with the two men "to get them to stop shooting." At that point, she "heard a ring" in her ear. When "[e]verything got quiet," she and D.H. ran into the convenience store. Mr. Roberts and the man with him had fled the scene. She realized she had been shot in the left side of her face and D.H. had been shot in his leg. They were taken to a hospital by ambulance.

During Ms. Garcia's testimony, the State offered into evidence ten photos of her taken at the hospital. Defense counsel objected to five of those photos—State's Exhibits 12, 13, 14, 17, and 18—as being "duplicitous of the other exhibits as well as overly prejudicial and meant only to inflame the passion of the jury." The State argued those photos were admissible because they were "from different angles, different perspectives." The trial court overruled defense counsel's objection and the photos were published to the jury. Ms. Garcia testified a bullet entered near her left ear and exited near her left eye as she was leaning over her son, leaving her with permanent damage and scarring.

About a week after the incident, police interviewed Ms. Garcia and conducted a photographic lineup consisting of six photos shown to her one by one. She testified she initially told police she was "confident" the fourth photo "could" be the person she saw shoot Mr. Arellano. But when she was subsequently shown the fifth photo, which was Mr. Roberts, she told police "not the previous" and stated she was "a hundred percent confident" the man in the fifth photo was the person who shot Mr. Arellano.

Mr. Arellano testified he saw Mr. Roberts pull out a gun and shoot him in the stomach. Mr. Arellano then saw the other man run to a tan Camry parked nearby and "come out of nowhere shooting." Mr. Arellano "wrestled" with that man and was shot in the arm during that struggle. Mr. Roberts and the other man then drove off in the Camry.

During closing, the State asserted "the only issue that has been raised in this trial . . . is whether this man, Archie Roberts, was the shooter," and "[t]here is no reason not to believe all of the evidence before you." Defense counsel argued that "[n]o physical evidence was even attempted in this case" and the State's only evidence was testimony from witnesses who were "not credible."

**Trial court did not abuse its discretion by admitting photos of witness's injuries**

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard and will not reverse the trial court's ruling unless it falls outside the zone of reasonable disagreement. *See, e.g., Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016); *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002).

Relevant evidence is that which has any tendency to make a consequential fact more or less probable than it would be without the evidence. TEX. R. EVID. 401. "Evidence need not by itself prove or disprove a particular fact to be relevant; it is sufficient if the evidence provides a small nudge toward proving or disproving some fact of consequence." *Duntsch v. State*, 568

S.W.3d 193, 216 (Tex. App.—Dallas 2018, pet. ref'd) (quoting *Stewart v. State*, 129 S.W.3d 93, 96 (Tex. Crim. App. 2004)).

A trial court may exclude relevant evidence when its probative value "is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403; *see Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). Evidence is unfairly prejudicial when it has an undue tendency to suggest an improper basis for reaching a decision. *Reese v. State*, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000). Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007). Thus, the balance is always slanted toward admission of relevant evidence. *De La Paz v. State*, 279 S.W.3d 336, 343 & n.17 (Tex. Crim. App. 2009). The rule envisions excluding relevant evidence only when there is a "clear disparity between the degree of prejudice of the offered evidence and its probative value." *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009).

When conducting a rule 403 analysis, courts must balance (1) the inherent probative force of the proffered item of evidence, along with (2) the proponent's need for that evidence, against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). "[T]hese factors may well blend together in practice." *Id*. at 642.

In determining whether photographic evidence is unfairly prejudicial, we consider the number of photographs, the size, whether they are in color or black and white, whether they are "gruesome," whether any bodies are naked, the availability of other means of proof, and other circumstances unique to the individual case. *Davis v. State*, 313 S.W.3d 317, 331 (Tex. Crim. App. 2010). If there are elements of a photograph that are genuinely helpful to the jury in making its decision, the photograph is inadmissible only if the emotional and prejudicial aspects substantially outweigh the helpful aspects. *Erazo v. State*, 144 S.W.3d 487, 491–92 (Tex. Crim. App. 2004).

Here, Mr. Roberts asserts the trial court abused its discretion by admitting State's Exhibits 12, 13, 14, 17, and 18 into evidence because those photos were "duplicative" and therefore "failed to add anything logical or relevant that made it more probative than prejudicial" and "were used simply to inflame the passions of the jury." He contends he was harmed because "[d]uplicative photographs could only be argued as being relevant to [his] character—that he was a bad person for having shot the victim," and "the State unfairly placed [his] character at the very core of its case by relying on the emotional and prejudicial aspects of these photographs to arouse the passions of the jury during the guilt/innocence phase which had the effect of tainting the jury's view of the evidence presented during trial."

Though Mr. Roberts contends the photos' "duplicative" nature renders them "irrelevant" to any consequential fact in this case, he does not explain or describe what the photos duplicate. To the extent he contends the photos are duplicative of Ms. Garcia's testimony, "[w]e reject the premise that visual evidence accompanying oral testimony is cumulative of the testimony or that it is of insignificant probative value." *Chamberlain v. State*, 998 S.W.2d 230, 237 (Tex. Crim. App. 1999). "Visual evidence accompanying testimony is most persuasive and often gives the fact finder a point of comparison against which to test the credibility of a witness and the validity of his conclusions." *Id.*

Further, the record does not show the complained-of photos were duplicative of each other or of additional photos of Ms. Garcia's wounds that were admitted without objection as Exhibits 9, 15, and 16.[1] Exhibit 12, a side view of Ms. Garcia's head, showed both of her wounds and their locations relative to her head and neck, but contained glare near the entrance wound. Exhibit 13 was a close-up of the side of her face and showed the bullet's exit path more clearly than the other photos. Exhibit 14 was a close-up of the side of her face taken from a slightly different angle that showed the exit wound's depth and its position relative to the entrance wound, without glare. Exhibit 17 showed a ruler next to the entrance wound that indicated the wound's size but also blocked the surrounding damage. Exhibit 18, a front view of Ms. Garcia's face, showed the exit wound's full depth but not the surrounding damage or that wound's relation to the entrance wound. Thus, each photo differed from the others and provided information that could aid in assessing Ms. Garcia's account of these events, which in turn bore on her credibility, a matter of consequence in this case. We cannot agree with Mr. Roberts that the complained-of photos lacked relevance. *See* TEX. R. EVID. 401; *Duntsch*, 568 S.W.3d at 216 ("it is sufficient if the evidence provides a small nudge toward proving or disproving some fact of consequence"); *see also Walker v. State*, No. 06-19-00080-CR, 2019 WL 6834800, at *6 (Tex. App.—Texarkana Dec. 16, 2019, no pet.) (mem. op., not designated for publication) (concluding two photographs of single gunshot wound taken at similar angles but from different distances aided jury in understanding events surrounding shooting and thus were both relevant).

Nor do we agree with Mr. Roberts that the photos were "inflammatory." The photos showed only Ms. Garcia's head and their presentation consumed only two pages of the reporter's record. *See Davis*, 313 S.W.3d at 331. Though the appellate record is silent as to the original

---

[1] Exhibit 9, which showed Ms. Garcia's upper half as she was lying on a stretcher covered up to her neck with blankets, was taken from a greater distance than any of the other photos and also contained substantial glare on her ear and face, thus making it the least detailed of the photos admitted. Exhibit 15 was a close-up of her exit wound with a ruler that showed the wound's measurements but blocked the area surrounding the wound. Exhibit 16 was a close-up of the entrance wound and a portion of the exit wound.

exhibits' size and whether they were in color or black and white, the complained-of photos were no more gruesome than the depictions of Ms. Garcia's wounds in Exhibits 9, 15, and 16, which were not objected to. Other than his relevancy challenge that we reject, Mr. Roberts does not explain, and the record does not show, how the five complained-of photos had any undue tendency to suggest an improper basis for reaching a decision. *See Reese*, 33 S.W.3d at 240.

We conclude the complained-of photos were relevant to the issues raised at trial and their probative value was not substantially outweighed by the danger of unfair prejudice. *See Hammer*, 296 S.W.3d at 568–69. Consequently, the trial court's decision to admit those photos did not constitute an abuse of discretion. *See id*.; *Erazo*, 144 S.W.3d at 491–92. We decide Mr. Roberts's issue against him and affirm the trial court's judgment.

/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
190376F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ARCHIE DOMINIC ROBERTS, Appellant

No. 05-19-00376-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 7, Dallas County, Texas
Trial Court Cause No. F-1776963-Y.
Opinion delivered by Justice Carlyle.
Justices Myers and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 13th day of February, 2020.